UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ISAAC S.,[1]

        Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

19-CV-6846-LJV
DECISION & ORDER

On November 18, 2019, the plaintiff, Isaac S. ("Isaac"), brought this action under

the Social Security Act.  He seeks review of the determination by the Commissioner of

Social Security ("Commissioner") that he was not disabled.  Docket Item 1.  On April 10,

2020, Isaac moved for judgment on the pleadings, Docket Item 6; on August 10, 2020,

the Commissioner responded and cross-moved for judgment on the pleadings, Docket

Item 10; and on August 31, 2020, Isaac replied, Docket Item 11.

For the reasons that follow, this Court grants Isaac's motion in part and denies

the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining
public access to judicial records, this Court will identify any non-government party in
cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order,
Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18,
2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history,
and the ALJ's decision and will refer only to the facts necessary to explain its decision.

**STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination."  *Id.*  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'"  *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the [Administrative Law Judge ('ALJ')] applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles."  *Johnson*, 817 F.2d at 986.

**DISCUSSION**

Isaac argues that the ALJ erred in two ways.  Docket Item 6-1.  First, he argues that the ALJ's residual functional capacity ("RFC") finding is unsupported by substantial evidence.  *Id.* at 14.  Second, he argues that the ALJ's "consistency finding" is

unsupported by substantial evidence. *Id.* at 28.  This Court agrees that the ALJ erred

and, because that error was to Isaac's prejudice, remands the matter to the

Commissioner.

## I.    DUTY TO DEVELOP THE RECORD

"Because a hearing on disability benefits is a non-adversarial proceeding, the

ALJ generally has an affirmative obligation to develop the administrative record."  *Perez*

*v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human*

*Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d

Cir. 1996) (same); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, before

rendering any eligibility determination, "make every reasonable effort to obtain from the

individual's treating physician (or other treating health care provider) all medical

evidence, including diagnostic tests, necessary in order to properly make such

determination").  Thus, "where there are deficiencies in the record, an ALJ is under an

affirmative obligation to develop a claimant's medical history 'even when the claimant is

represented by counsel or . . . by a paralegal.'"  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d

Cir. 1999) (quoting *Perez*, 77 F.3d at 47).  The Commissioner's own regulations reflect

this duty, stating that "[b]efore [the Commissioner] make[s] a determination that [a

claimant is] not disabled, [the Commissioner] will develop [the claimant's] complete

medical history . . . [and] will make every reasonable effort to help [the claimant] get

medical reports from [her] own medical sources when [she] give[s] [the Commissioner]

permission to request the reports."  20 C.F.R. § 404.1512(d)(1).

When a claimant is receiving or has received ongoing treatment from a qualified

medical professional, the Commissioner "will request a medical source statement [from

the claimant's treating source] about what [the claimant] can still do despite [her] impairment(s)."  *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order) (quoting former 20 C.F.R. § 416.913(b)(6)[3]) (additional citation omitted).  That is so because the opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with claimants and therefore are most able to "provide . . . detailed, longitudinal picture[s] of [claimants'] medical impairments"—are entitled to "controlling weight" so long as they are "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the claimant's] case record."[4]  *See* 20 C.F.R. §§ 416.913(a) (2015), 416.927(c)(2) (2015); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order).

---

[3] This section was amended, effective March 27, 2017.  Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017).  Because Isaac applied for disability benefits starting on May 25, 2016—that is, before the date the changes became effective—his claim is governed by the prior regulation.  *See id.* at 5844-46.

[4] Indeed, an ALJ may not give a treating source's opinion anything less than controlling weight unless she first "explicitly consider[s], *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[] (4) whether the physician is a specialist."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted).  "An ALJ's failure to 'explicitly' apply [these] factors [before] assigning [less-than-controlling] weight" to a treating source opinion "is a procedural error."  *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).  The ALJ here failed to "explicitly" consider several of the *Burgess* factors before assigning "limited weight" to the opinions of Isaac's treating physician, Lance O. Yarus, D.O.  *See* Docket Item 5 at 31.  Although Isaac did not raise the issue, that is another error that requires remand in and of itself.  *See Estrella*, 925 F.3d at 96.  On remand, the ALJ must weigh Dr. Yarus's opinions consistent with that "treating physician rule."  *See Flynn v. Comm'r of Soc. Sec.*, 729 F. App'x 119, 122 (2d Cir. 2018) (summary order).

The Second Circuit has observed that the "plain text" of section 416.913(b)(6) "does not appear to be conditional or hortatory: it states that the Commissioner '*will* request a medical source statement' containing an opinion regarding the claimant's residual capacity. The regulation thus seems to impose on the ALJ a duty to solicit such medical opinions." *Tankisi*, 521 F. App'x at 33 (emphasis in original) (quoting former 20 C.F.R. § 416.913(b)(6)) (additional citation omitted). Although "remand is not always required when an ALJ fails in [her] duty to request [medical source] opinions [from treating sources], particularly where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," remand is appropriate where the records are not otherwise complete. *See id.* at 34. That is the case here.

On May 10, 2016, Isaac's treating physician, Lance O. Yarus, D.O., found that Isaac's back injuries did not prevent him from working and that he could return to work with no restrictions. Docket Item 5 at 816. But just two weeks later, on May 25, 2016, Dr. Yarus opined that Isaac could not work at all. *Id.* at 815. Nothing in Dr. Yarus's treatment notes or opinions explains why Dr. Yarus initially found that Isaac was able to work but—just fifteen days later—found that he could not.

 Indeed, Dr. Yarus's treatment notes from May 10, 2016 (when Dr. Yarus found that Isaac could work) through the rest of 2016 (when Dr. Yarus found that Isaac could not work) included almost identical physical findings: back pain that sometimes radiated down the legs, limited range of motion in the lumbar spine, pain when bending to the side or rotating, and tenderness. *See, e.g.*, *id.* at 754-56, 762-64, 770-72, 793-95, 801-03. Dr. Yarus also consistently found—both before after finding that Isaac could not

work—that Isaac's back impairments "play[ed] a significant role in not allowing [Isaac] to perform [his] activities of daily living and [his] ability to function without restrictions." *See, e.g.*, *id.* at 776, 795, 799, 804.

The discrepancy in Dr. Yarus's records might have been a mistake.[5]  Perhaps Dr. Yarus changed his mind.  Or maybe something happened in the two intervening weeks that changed Isaac's limitations.  The point is that there is no way for this Court to know, and there was no way for the ALJ to know, either.

Nevertheless, the ALJ simply discounted Dr. Yarus's treating source opinions because they were "inconsistent."  *See id.* at 31 ("[Dr. Yarus's] opinions are given limited weight.  The assessments are inconsistent.  It appears that two weeks after finding no restrictions, Dr. Yarus stated that the claimant could not return to work.  However, physical examinations remained unchanged between the two visits.").  In doing so, the ALJ effectively credited the assessment that Isaac could work and discredited the later assessments to the contrary.  But holding an unexplained, obvious, and basic discrepancy in a physician's records against a claimant is a clear mistake.  The ALJ was obliged to find out which assessment was accurate and the reason behind the 180-degree change, not simply choose the less-restrictive assessment and let the chips fall where they may.  And the ALJ then was required to weigh the valid assessment and, if she disagreed with it, to explain why.

---

[5] Because the second assessment was followed by a third assessment that also found Isaac unable to work, *see* Docket Item 5 at 815 (finding that Isaac could not perform any of his prior job functions), it is likely that any mistake was in Dr. Yarus's first opinion.  And that is still another reason why the ALJ erred by effectively agreeing with Dr. Yarus's only opinion that Isaac could work.

In the jargon of social security cases, the "inconsisten[cy]" created a gap in the record.  From the face of Dr. Yarus's treatment notes, it appears that Isaac's condition remained unchanged throughout 2016.  So unless the May 25 opinion was simply a mistake, there must have been something not evidenced in those notes that led Dr. Yarus to conclude that, as of May 25, 2016, Isaac could not work.  And because the ALJ could not possibly know whether there was a mistake—or, if not, the reason behind the changed opinion—there was an "obvious gap[] in the administrative record" that the ALJ was obliged to fill.  *See Rosa*, 168 F.3d at 79 n.5 (quoting *Perez*, 77 F.3d at 48).

The ALJ's failure to fill that gap by recontacting Dr. Yarus prejudiced Isaac.  While it is impossible to say with certainty what parts of the RFC Dr. Yarus might disagree with in a fully-developed medical opinion, Dr. Yarus's findings that are in the record seriously question whether Isaac could perform the work that the RFC contemplated.  *Compare* Docket Item 5 at 814 (Dr. Yarus's finding that Isaac had "flare-ups" "10-12 times" per week that lasted "6-8 hours or 4 day[s] per episode"), *and id.* at 766, 793, 801 (Dr. Yarus's noting pain in Isaac's back that radiates to his legs), *with id.* at 25 (RFC finding that Isaac could "sit six of eight hours[] and stand or walk six of eight hours" per workday).  That is enough to require remand.  *See Manuel v. Comm'r of Soc. Sec.*, 2020 WL 2703442, at *4 (May 26, 2020) (remanding where the ALJ failed to consider an opinion that "could have resulted in a finding of disability . . . if given weight by the ALJ").

## II.   RFC DETERMINATION

"Under the Commissioner's own rules, if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not

adopted.'" *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).  An "ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,'" *id.* (quoting *Gecevic v. Sec'y of Heath & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995)), and "[t]here is no absolute bar to crediting only portions of medical source opinions," *Younes v. Colvin*, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015).  But when "an ALJ . . . chooses to adopt only portions of a medical opinion[, she] must explain . . . her decision to reject the remaining portions."  *Raymer v. Colvin*, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (citing *Younes*, 2015 WL 1524417, at *8).

Moreover, if the ALJ rejects an opinion or part of an opinion about a particular limitation, the ALJ must base that decision on other medical evidence and may not replace the medical opinion with the ALJ's lay judgment.  *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for [a] competent medical opinion. While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." (citation and original alterations omitted)).  And that is especially so when the ALJ constructs a detailed RFC with very specific limitations: those limitations must be based on medical judgments, not created from whole cloth by a lay ALJ.  *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order).

Here, the ALJ found that Isaac had the RFC

> to perform a range of light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b).  [Isaac] could lift/carry twenty pounds occasionally and ten pounds frequently, sit six of eight hours, and stand or walk six of eight hours. He should avoid ladders and scaffolds and should not work at unprotected heights or with dangerous moving machinery.  [Isaac] could occasionally climb, balance, stoop, kneel, crouch, and crawl.

Docket Item 5 at 25.  In reaching this conclusion the ALJ afforded "some weight" to the opinion of Harbinder Toor, M.D., who had conducted a physical consultative examination of Isaac in July 2016.  *See id.* at 31.  During Dr. Toor's examination, Isaac was "in moderate pain," and he had "[d]ifficulty changing for [the] exam[,] getting on and off [the] exam table[, and] ris[ing] from [the] chair."  *Id.* at 587.  Dr. Toor ultimately found that Isaac had a "moderate limitation standing, walking, and sitting a long time[,] . . . reaching, pushing, and pulling"; that he had a "moderate to marked limitation bending or lifting"; and that his "pain and headache c[ould] interfere with his routine."  *Id.* at 590.

The ALJ rejected Dr. Toor's pushing and pulling limitation because "subsequent treatment notes show[ed] that [the] shoulder pain resolved and [that Isaac] had full range of motion"; the ALJ said that otherwise, "the record evidence support[ed] moderate limitations."  *Id.* at 31.  Other than that, the ALJ did not say which parts of Dr. Toor's opinion she accepted in formulating the RFC, which parts she rejected, and why.[6]  Nor did the ALJ tie her conclusions about what Isaac could do to the limitations in

---

[6] The ALJ might have chosen to discredit the opinion of Dr. Toor and credit the opinion of John Orsini, M.D., an orthopedist who opined that Isaac had "no, 0, none nothing,[ ]zilch, ninca [sic], nada" objective indications "in the lumbar spine to indicate a cause for leg symptoms or radicular pain."  *See* Docket Item 5 at 845; *see also id.* at 32. But the ALJ did not say that.  In fact, she gave Dr. Orsini's opinion only "some weight," finding that Isaac had "decreased range of motion and tenderness."  *Id.* at 32.  Because the ALJ did not explain what parts of whose opinions she was crediting and why, this Court has no way of assessing her reasoning.  *Cf. Hamedallah ex rel. E.B. v. Astrue,*

Dr. Toor's assessments.  In fact, some of the ALJ's conclusions seem inconsistent with Dr. Toor's evaluation.

For example, Dr. Toor's opinion that Isaac had a "moderate limitation standing, walking, and sitting a long time," *see id.* at 590, seems inconsistent with the ALJ's conclusion that Isaac could "sit six [hours]" and "stand or walk six [hours]" a day, *see id.* at 25.  Perhaps the ALJ credited that portion of Dr. Toor's opinion without explaining how her RFC determination was consistent with it.  Perhaps she rejected that portion of Dr. Toor's opinion and "resort[ed] to impermissible interpretation of raw medical data" to conclude that Isaac could sit, and stand or walk, for six hours a day.[7]  *See Sherry v. Berryhill*, 2019 WL 441597, at *5 (W.D.N.Y. Feb. 5, 2019).  Either way, the ALJ erred. *See Perkins v. Berryhill*, 2018 WL 3372964, at *4 (W.D.N.Y. July 11, 2018) ("Without reliance on a medical source's opinion or a function-by-function assessment connecting the medical evidence to the RFC, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review.").

---

876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) ("The ALJ (not the Commissioner's lawyers) must 'build an accurate and logical bridge from the evidence to [her] conclusion to enable a meaningful review.'") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

[7] Dr. Toor's opinion was the only one in the record, rendered after Isaac's onset date, that specifically mentioned Isaac's ability to sit, stand, and walk.  And while there are treatment notes from Concentra in late 2015 finding that Isaac could bend frequently, squat and kneel occasionally, lift 25 pounds consistently, push and pull occasionally, but not walk on uneven terrain, *see e.g.*, Docket Item 5 at 444, 455, 458, 466, 469, 477, the ALJ afforded them only "light weight," as Isaac was still working at that time, *see id.* at 30.

Likewise, it is unclear how the ALJ was able to determine that Isaac could "occasionally climb, balance, stoop, kneel, crouch, and crawl," *see* Docket Item 5 at 25, notwithstanding Dr. Toor's observation that Isaac had difficulty changing, getting on and off the exam table, and standing up, as well as his opinion that Isaac was moderately to markedly limited in bending, *see id.* at 587, 590. Nor is it clear how Isaac could "lift[ and ]carry twenty pounds occasionally and ten pounds frequently," *id* at 25, with a moderate to marked limitation in lifting, *see id.* at 590. Put another way, the ALJ failed to construct an "an accurate and logical bridge" between her recitation of the facts and the conclusions that she reached, an error that requires remand. *See Hamedallah ex rel. E.B.*, 876 F. Supp. 2d at 142.

The Commissioner argues that the RFC might be consistent with the moderate limitations that Dr. Toor found because "an opinion assessing moderate limitations for sitting, standing[,] and walking is not necessarily inconsistent with a determination that a claimant can perform the requirements of light or medium work." Docket Item 10-1 at 23-24 (internal marks omitted) (citing *Alianell v. Colvin*, 2016 WL 981864, at *13 (W.D.N.Y. Mar. 15, 2016) (additional citation omitted)). The Commissioner's argument misses the mark. The point is not whether courts have found certain activities consistent with certain medical findings; the point is that the ALJ did not connect the dots between Dr. Toor's opinion and the RFC. In other words, even if Dr. Toor's opinion *could be* reconciled with the ALJ's RFC determination, the problem is that the ALJ did not do that here.

Stated another way, the Court has no idea whether Dr. Toor would agree with the conclusions in the RFC. Indeed, the Court has no way of knowing whether any medical

11

professional would agree with the ALJ's RFC formulation. And without knowing that, the Court has no way of evaluating whether the RFC is based on medical opinions or only on the ALJ's lay opinion. *See Thomas v. Comm'r of Soc. Sec.*, 2019 WL 2295400, at *2 (W.D.N.Y. May 30, 2019) (explaining that "[a]lthough the RFC determination is an issue reserved for the [C]ommissioner, an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings," and therefore, "an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence").

To be clear, this Court is not saying that Dr. Toor's opinion was inherently inconsistent with the ALJ's RFC determination. But neither is it consistent on its face. And the ALJ failed to explain her reasoning either linking the opinion to, or providing an alternative basis for, the RFC. *See Carroll v. Colvin*, 2014 WL 2945797, at *4 (W.D.N.Y. June 30, 2014) ("[T]his is not to say that any moderate limitation in sitting or standing necessarily renders a claimant disabled . . . . But it does mean that [an ALJ] is required, in accordance with SSR 06-03p, to discuss and provide reasons tending to support the finding that, despite the moderate limitations . . . [the claimant] could still perform light work."). So that frustrates this Court's efforts to "assess the validity of the agency's ultimate findings and afford [Isaac] meaningful judicial review." *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)).

Finally, the ALJ also erred in finding an RFC with very specific limitations unsupported by medical evidence or opinions. For example, the ALJ found that Isaac could sit, and stand or walk, for six hours—as opposed to, say, five or seven hours—a day. As noted above, Dr. Toor had opined that Isaac was moderately limited "standing,

12

walking, and sitting a long time," Docket Item 5 at 590, but no physician, including Dr.

Toor, opined on how long Isaac could sit, or stand and walk, in a given day. Therefore,

the ALJ's specific limitation was a product of her own lay judgment and not based on

the opinion of a medical professional. *See Sherry*, 2019 WL 441597, at *5 ("The Court

cannot conclude that there was substantial evidence to support the ALJ's RFC

determination that plaintiff was capable of light work with restrictions and is left without a

clear indication of how the ALJ reached the RFC determination without resorting to

impermissible interpretation of raw medical data.").

Both because the ALJ did not adequately assess or explain her assessment of

Dr. Toor's opinion and because the ALJ created an RFC with specific but medically-

unsupported limitations, the RFC assessment also requires remand. [8]  *See Balsamo*,

142 F.3d at 81; *Raymer*, 2015 WL 5032669, at *5.

---

[8] The Court "will not reach the remaining issues raised by [Isaac] because they
may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*,
350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-
CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the
proper legal standard, the Court will decline at this time to consider whether substantial
evidence exists to support the findings the ALJ made.").

**<u>CONCLUSION</u>**

The Commissioner's motion for judgment on the pleadings, Docket Item 10, is DENIED, and Isaac's motion for judgment on the pleadings, Docket Item 6, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:         April 9, 2021
               Buffalo, New York


                                          */s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE